**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| Michelle Patrick, | : |
| Plaintiff, | : Case No. 1:17-cv-00492 |
| v. | : Judge Michael R. Barrett |
| Shawnee State University., | : |
| Defendant. | : |

**OPINION AND ORDER**

This matter is before the Court on Defendant Shawnee State University's Motion for Summary Judgment. (Doc. 24). Plaintiff Michelle Patrick filed a Response in Opposition (Doc. 39)[1] and Defendants filed a Reply (Doc. 34). Plaintiff's Motion for Leave to file a Surreply (Doc. 37) is also before the Court. Defendant filed a Response in Opposition (Doc. 40) and Plaintiff submitted a Reply (Doc. 41).

**I. Background**

Defendant is a public university located in Portsmouth, Ohio. (Doc. 2, ¶ 2). Plaintiff began working for Defendant in November 2003 as a Testing Coordinator in Defendant's Student Success Center which provides academic services and support to Defendant's students. (Doc. 20, PageID 20-21); (Doc. 21, PageID 221). Plaintiff became an Academic Support Coordinator in the Student Success Center in 2011. (Doc. 21, PageID 222-23). Brenda Haas was the Dean of the Student Success Center from 2011 until December

---
[1] The Court permitted Plaintiff to file a corrected version of her Response in Opposition that included changes to citations to conform with the undersigned's Standing Orders and to correct her exhibit references. (Doc. 36).

2016 and approved Plaintiff's request to move from Testing Coordinator to Academic Support Coordinator. (Doc. 20, PageID 70-71); (Doc. 21., PageID 222-23). In September 2013, Plaintiff applied for and became an Accessibility Coordinator in the Student Success Center. (*Id.*, PageID 235).

In 2015, Defendant posted the position of Director of Advising and Academic Resources for the Student Success Center ("Director position"). (Doc. 20, PageID 87-88). Dean Haas worked with Defendant's Human Resources ("HR") Department to form a selection committee to fill the Director position. (*Id.*, PageID 76-77). HR initially screened the applications for the Director position from a nationwide search and gave a list of applicants to the selection committee. *Id.* The committee used HR's list to select applicants for telephone interviews with the committee. (*Id.*, PageID 80, 94-95). After the telephone interviews, the committee selected five applicants for on-campus interviews which consisted of a one-on-one interview with Dean Haas, an in-person interview with the selection committee, and a presentation to the selection committee that was also open to the entire university. (*Id.*, PageID 94-95). The individual selection committee members subsequently ranked each candidate and then the selection committee, as a group, ranked each candidate by creating a final document titled "Data Fusion" for each applicant. (*Id.*, PageID 84-85, 102, 112-119); (Doc. 20-1, PageID 188-92). The rankings found on the final Data Fusion sheets determined the order in which Defendant offered the Director position to the remaining five applicants. (Doc. 20, PageID 103).

On June 3, 2015, Plaintiff informed Dean Haas, her boss, that she was interested in taking intermittent FMLA leave for the summer, as her son was out of school for the summer, his scheduled caretaker suddenly became ill, and he required a high level of

2

care due to his severe autism. (Doc. 21, PageID 258); (Doc. 21-1, PageID 376, 379). Plaintiff wanted to work a 20-hour week until mid-August when her son would return to school. (Doc. 21, PageID 258); (Doc. 21-1, PageID 376). On June 4, 2015, Plaintiff inquired with Defendant's HR Department about taking FMLA leave and an HR representative responded with the steps that Plaintiff needed to take to apply for FMLA leave. (Doc. 21-1, PageID 378-79). Also on June 4, 2015, Plaintiff submitted her application to Defendant for the Director position. (Doc. 21-1, PageID 373).

On June 9, 2015, Plaintiff received approval for her FMLA leave to begin on June 15, 2015. *Id.* She had her telephone interview with the selection committee for the Director position that same day. *Id.* The selection committee subsequently invited Plaintiff to participate in an on-campus interview. *Id.* Her on-campus interview occurred on June 26, 2015. *Id.*

After all of the on-campus interviews occurred, the selection committee met and created a Data Fusion sheet for each candidate. (Doc. 20, PageID 103). Based on the committee's rankings, Defendant first offered the Director position to Ronda Bryant, an individual who did not work for Defendant, who declined the offer. (Doc. 20, PageID 106); (Doc. 24-2, ¶ 8). Defendant then offered the position to Melinda Finkle, an individual who did not work for Defendant, and she also declined the offer. (Doc. 20, PageID 106); (Doc. 24-2, ¶ 8). Defendant next offered the position to Glenna Heckler-Todt, who worked for Defendant as a Senior Developmental Writing Instructor in Defendant's English Department, and she accepted the offer. (Doc. 20, PageID 107); (Doc. 31, PageID 743). The selection committee ranked Plaintiff immediately after Heckler-Todt. (Doc. 20-1, PageID 188-92).

3

On July 20, 2015, Plaintiff learned that the selection committee offered Heckler-Todt the Director position. (Doc. 21, PageID 279). The next day, Plaintiff informed Defendant's Director of HR that she believed the selection committee did not offer her the Director position because of her use of FMLA leave. (Doc. 23, PageID 443-45); (Doc. 23-1, PageID 501). Specifically, Plaintiff believed that there was a calculated effort between Dean Haas and the selection committee to not award Plaintiff the position due to Dean Haas' dislike of Plaintiff's use of, inter alia, FMLA leave. *Id.* Defendant's HR Department met with Plaintiff, conducted interviews, and created an Investigation Report, dated September 18, 2015, which stated HR's conclusion that no discrimination against Plaintiff occurred when the selection committee offered Heckler-Todt the Director position instead of Plaintiff. (*Id.*, PageID 501-03).

In late 2016, Defendant's Provost, Dr. Jeffrey Bauer, appointed Colleen Kosan, an individual who already worked at Defendant as an Academic Advisor in the Student Success Center, to be the Assistant Director of Advising and Academic Resources ("Assistant Director position"). (Doc. 29). Dean Haas and Glenna Heckler-Todt recommended Colleen Kosan to Dr. Bauer and there was no internal or external search for applicants or formation of a selection committee. (*Id.*, PageID 686-88).

Plaintiff filed her Complaint in this matter on July 20, 2017 (Doc. 1) and her First Amended Complaint on August 8, 2017[2] (Doc. 2). She brings one count of retaliation[3] in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601*, et seq. Id.* She asserts that Defendant retaliated against her, as Defendant's failure to promote her to the Director position and appoint her to the Assistant Director position was due to her use of FMLA leave to care for her son. *Id.*

## II. **Plaintiff's Motion for Leave to File Surreply**

Plaintiff moves to submit an additional affidavit as a surreply and asserts that it is "new evidence" that shows pretext and a genuine dispute of material facts relating to the composition of the section committee. (Doc. 37) (relying on *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481-82 (6th Cir. 2003)). Plaintiff's reliance on *Seay* is misplaced. (Doc. 37, PageID 1020). In that case, the U.S. Court of Appeals for the Sixth Circuit held that the district court abused its discretion when it granted the defendant's motion for summary judgment just three days after receiving the reply brief, to which the defendant attached new evidence and the court relied on that new evidence without giving Plaintiff

---

[2] To the extent that Plaintiff's Response includes additional theories of FMLA retaliation based on facts that occurred in March 2018, *i.e.*, that she received an allegedly negative performance review and her position was transferred to a different department (Doc. 39, PageID 1038-39, 1049-50), she has not filed a motion to further amend her complaint to include any additional facts or theories of recovery based on new facts that occurred after she filed her First Amended Complaint. *Cf. Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) ("Once the scheduling order's deadline passes, a [party] first must show good cause under Rule 16(b) for failure to earlier seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)."); FED. R. CIV. P. 15(a), 16(b)(4). The Court will only consider Plaintiff's FMLA retaliation theory based on the facts pled.

[3] To the extent that Plaintiff's Response suggests that her Amended Complaint includes a theory of recovery based on FMLA interference, the Court is not convinced and will not analyze such a theory of recovery, because the essence of her claim is retaliation and not interference with her substantive FMLA rights. *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012); *see also Brown v. Duke Energy Corp.*, No. 1:13CV869, 2019 WL 1439402, at *8 (S.D. Ohio Mar. 31, 2019) ("The Sixth Circuit has recognized two discrete theories of recovery under the FMLA: (1) the so-called interference or entitlement theory arising from § 2615(a)(1), and (2) the retaliation or discrimination theory arising from § 2615(a)(2).") (quoting *Seeger*, 681 F.3d at 282) (internal quotation marks omitted). *Compare* (Doc. 39, PageID 1040, 1042,1048), *with* (Doc. 2).

an opportunity to respond to it. *Seay*, 339 F.3d at 481-82. The Sixth Circuit explained that, "[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated, a problem arises with respect to Federal Rule of Civil Procedure 56(c)" which "requires that an adverse party receive ten days notice before a district court may enter summary judgment." *Id.* at 481 (citing FED. R. CIV. P. 56(c)).

Here, Defendant did not include any new evidence in or attached to its Reply. Plaintiff asserts that Defendant "referred to the final members of the Selection Committee as Brenda Haas, Heather Cantrell, Marcie Simms, and Michael Barnhart" in its Reply and the affidavit establishes otherwise. (Doc. 37) (citing (Doc. 34, PageID 890)). Defendant's assertion about the final composition of the selection committee in its Reply, however, is not new, as Defendant asserted in its Motion for Summary Judgment that the committee included only Brenda Haas, Heather Cantrell, Marcie Simms, and Michael Barnhart. (Doc. 24, PageID 507). The proper time for Plaintiff to introduce the proposed affidavit was when she filed her Response and she failed to do so. Finally, Plaintiff fails to acknowledge the Court's prohibition on additional memoranda—beyond memoranda in support, memoranda in opposition, and reply memoranda—without leave of court for good cause shown. S.D. Ohio Civ. R. 7.2(a)(2); rather, she tersely asserts that cases should be resolved on their merits, not mere technicalities. (Doc. 41, PageID 1151).

The Court will deny Plaintiff's Motion (Doc. 37) due to her failure to establish that Defendant introduced new evidence that necessitates an additional response, show good cause, and explain why this is an appropriate circumstance for the Court to use its discretion to allow a surreply. *See Seay*, 339 F.3d at 482; *see also* S.D. Ohio Civ. R.

7.2(a)(2); *accord. United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 276-77 (D.D.C. 2002) ("A surreply may be filed only by leave of Court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond.").

III. **Motion for Summary Judgment**

   a. **Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

   b. **FMLA Retaliation**

The FMLA entitles an eligible employee to 12 workweeks of leave during a 12-month period to, inter alia, "care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA "makes it unlawful for employers to . . . retaliate against employees who exercise their FMLA rights." *Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625, 629 (6th Cir. 2008); 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."). "Federal regulations

7

regarding the FMLA specifically prohibit employers from "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." *Campbell v. Costco Wholesale Corp.*, No. 3:12-CV-00306, 2013 WL 5164635, at *5 (M.D. Tenn. Sept. 12, 2013) (citing 29 C.F.R. 825.220(c)).

Plaintiff may prove her FMLA retaliation claim through direct or indirect evidence, and she need only prove retaliation through one of those methods. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348-49 (6th Cir. 1997). "Direct evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [the FMLA], but also that the employer acted on that predisposition." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 706 (6th Cir. 2008). Direct evidence is that evidence which, if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor" in the adverse employment decision at issue. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 (1989) (emphasis added).

The *McDonnell Douglas* burden-shifting framework applies to FMLA retaliation claims that are based on circumstantial evidence. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McDonnell Douglas*, as modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), established a tripartite burden-shifting framework. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). First, "the plaintiff bears the initial 'not onerous' burden of establishing a prima facie case of discrimination by a preponderance of the evidence." *Id.* (quoting *Burdine*, 450 U.S. at 253). Second, if a plaintiff can establish a prima facie case, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Burdine*,

8

450 U.S. at 253 (quoting *McDonnell Douglas*, 441 U.S. at 802). Third, if the defendant articulates such a reason, the burden shifts back to the plaintiff to present evidence that the non-discriminatory reason offered by the defendant was merely a pretext for discrimination. *Id.*

### i. Direct Evidence

Plaintiff asserts that she has direct evidence of FMLA retaliation in the form of Dean Haas' statements to both James Weaver and Dr. Bauer. (Doc. 39, PageID 1040-41). Starting with Haas's statements to Weaver, Plaintiff alleges that Haas told Weaver that Haas: was upset that Plaintiff took FMLA leave, thought Plaintiff could not do the Director position because of Plaintiff's FMLA leave, and was going to give the Director position to Heckler-Todt mainly because Haas did not want Plaintiff to have the job. (*Id.*, PageID 1041). For support for each of those alleged statements, Plaintiff cites only her own affidavit. *Id.* (citing Exhibit C); *see* (Doc. 39-3, ¶ 7, PageID 1041). Plaintiff's allegations—that Weaver told Plaintiff that Haas told him—constitute inadmissible hearsay within hearsay. *See* FED. R. CIV. P. 56(c)(4); FED. R. EVID. 802; *see also Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 495 (6th Cir. 2002) (affidavit must be based on personal knowledge, not hearsay or inadmissible evidence); *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) ("Hearsay evidence may not be considered on summary judgment."). *But see* FED. R. EVID. 801(d)(2)(D) ("A statement that meets the following conditions is not hearsay: The statement is offered against an opposing party and was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."). Plaintiff does not address the admissibility of these statements or provide any facts to demonstrate that the content of

9

the statements satisfies the scope requirement of Federal Rule of Evidence 801(d)(2)(D). *See Ward v. Sevier Cty. Gov't*, No. 3:18-CV-113, 2020 WL 889159, at *6 (E.D. Tenn. Feb. 24, 2020). Accordingly, the Court will not consider the statements by Haas to Weaver as alleged in Plaintiff's affidavit.[4] *See Sperle*, 297 F.3d at 495; *see also Jacklyn*, 176 F.3d at 927.

Turning to Dean Haas' alleged statements to Dr. Bauer, Plaintiff asserts that Hass disclosed Plaintiff's use of FMLA leave to Bauer during the selection committee process and argues that "[a] jury could infer that [this disclosure] was done to secure support for the selection of Ms. [Heckler-]Todt for the Director position." (Doc. 39, PageID 1041) (citing Doc. 29, PageID 675-76). However, this statement, if in fact said by Haas, does not constitute direct evidence, as direct evidence does not require an inference to reach the conclusion that unlawful discrimination was a motivating factor in the adverse employment decision. *See Ryder v. Beaumont Health Inc.*, No. 18-10760, 2019 WL 5068474, at *6 (E.D. Mich. Oct. 9, 2019) ("Direct evidence of discrimination is that which 'does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group.'") (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)). Plaintiff's argument expressly anticipates an inference by the factfinder and thus does not constitute direct evidence of FMLA retaliation.

### ii. **Indirect Evidence: *McDonnell Douglas* Step One**

"[A]t the summary judgment stage, a plaintiff's burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an

---

[4] This includes Plaintiff's argument that "stereotyping constitutes direct evidence." (Doc. 39, PageID 1041).

adverse employment action 'under circumstances which give rise to an inference of unlawful discrimination.'" *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007) (quoting *Burdine*, 450 U.S. at 253). A plaintiff establishes a prima facie case of retaliation under the FMLA by showing that: (1) she exercised an FMLA-protected right; (2) the defendant knew she exercised the right; (3) the plaintiff suffered an adverse employment action; and (4) a causal connection exists between the plaintiff's protected activity and the adverse employment action. *See Stein v. Atlas Ind., Inc.*, 730 F. App'x 313, 319 (6th Cir. 2018).

Regarding Plaintiff's argument that Defendant retaliated against her when it failed to promote her to the Director position due to her use of FMLA leave, Defendant argues that Plaintiff cannot establish the second and forth elements. (Doc. 24, PageID 513-15). However, Defendant acknowledges that both its HR Department and Dean Haas, Plaintiff's boss and the chair of the selection committee, were aware of Plaintiff's use of FMLA leave at the time it filled the Director position. *See id.* Moreover, "[w]here an adverse employment action occurs *very* close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (emphasis added). Here, on June 3, 2015, Plaintiff informed Dean Haas that she was interested in taking FMLA leave for the summer (Doc. 21, PageID 376); on June 4, 2015, Plaintiff inquired with Defendant's HR Department about taking FMLA leave, an HR representative responded with the steps Plaintiff needed to take to apply for FMLA leave, and she submitted her application for the Director position (*Id.*, PageID 378-79); on

June 9, 2015, she received FMLA designation (*Id.*, PageID 373); and, on July 20, 2015, she learned that the selection committee selected Ms. Heckler-Todt for the Director position (*Id.*, PageID 279). The Court finds that this proximity in time between Plaintiff's protected activity and the adverse employment action—the 47 days between June 3, 2015 and July 20, 2015—constitutes evidence of a causal connection. *See Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (finding causal connection where the plaintiff was terminated three months after she requested FMLA leave, and the very day that she was scheduled to return to work); *Brown v. Duke Energy Corp.*, No. 1:13CV869, 2019 WL 1439402, at *10 (S.D. Ohio Mar. 31, 2019). The Court concludes that Plaintiff has established a prima facie case of retaliation under the FMLA.

With respect to Plaintiff's argument that Defendant retaliated against her when it failed to appoint her to the Assistant Director position due to her use of FMLA leave, Defendant argues that Plaintiff cannot show the third or fourth elements of a prima facie case. (Doc. 34, PageID 896-99). Assuming without deciding that Plaintiff has established the third element, the Court agrees that she fails to establish the fourth element. Plaintiff informed Defendant of her intent to take intermittent FMLA leave on June 3, 2015 and Dr. Bauer appointed Ms. Kosan to be the Assistant Director of Advising and Academic Resources in either November 2016 or December 2016 (Doc. 39, PageID 1037, 1048), a year and a half later. Plaintiff does not acknowledge her burden to establish a prima facie case regarding this theory of FMLA retaliation and fails to establish that there is a causal connection between her use of FMLA leave in June 2015 and Defendant's appointment of Ms. Kosan to the Assistant Director position in November 2016 or December 2016. *See* (*id.*, PageID 1048-49); *see also Nilles v. Givaudan Flavors Corp.*, 521 F. App'x 364,

370 (6th Cir. 2013). Plaintiff fails to state a prima facie case with respect to the Assistant Director position and Defendant is entitled to summary judgment on this claim.

### iii. Indirect Evidence: *McDonnell Douglas* Step Two

Proceeding with Plaintiff's claim of FMLA retaliation regarding the Director position only, once the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action, the defendant need not "persuade the court that it was actually motivated by the proffered reason[ ]" but must "raise a genuine issue of fact." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814-15 (6th Cir. 2011). Here, the Court finds that Defendant has articulated a legitimate reason for not promoting Plaintiff to the Director position, as Defendant presents evidence that Ms. Heckler-Todt was more qualified than Plaintiff in light of Ms. Heckler-Todt's vision for the program, experience, doctorate work, and rapport with the faculty. *See* (Doc. 20, PageID 144-45); *see also Campbell*, 2013 WL 5164635, at *8.

### iv. Indirect Evidence: *McDonnell Douglas* Step Three

A plaintiff may demonstrate that an employer's proffered legitimate reason for an adverse employment action is pretextual in one of three ways: (1) the defendant's stated reason for the adverse employment action has no basis in fact; (2) the reason offered for the adverse employment action was not the actual reason; or (3) the reason offered was insufficient to explain the defendant's action. *See Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012). Plaintiff alleges the second type of pretext (Doc. 39, PageID 1042-48) and thus must establish that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext." *Campbell*, 2013 WL 5164635, at *9 (citing *Manzer v. Diamond Shamrock*

13

*Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009)).

Defendant's proffered legitimate reason relies heavily on both the selection committee's final Data Fusion sheets for each candidate and Dean Haas' description of those sheets. (Docs. 24, 34). Defendant states that the final Data Fusion sheets: include all of the selection committee members' individual scores and a group "consensus score" for each candidate; the numbers that appear under the initials of each committee member represent the scores that the individual committee member assigned to each applicant; the "consensus score" was the committee's score as a group after comparing and discussing their individual score; and the candidate with the highest score was the committee's first rank, the second highest score its second rank, and so on. (Doc. 24, PageID 508); (Doc. 20-1, PageID 188-92). However, Plaintiff contends that questions of material fact exist regarding the creation and compilation of the final Data Fusion sheets and, consequently, on Defendant's reliance on the sheets for justification of its hiring decision.

The final Data Fusion sheets for the five applicants who participated in on-campus interviews appear to consist of a row labeled "Committee Member" and a column labeled "Competency" and lists four committee members' initials along with their scores for the four Competency categories (those categories are discussed below). (Doc. 20-1, PageID 188-201). However, there is one column with scores for the four Competency categories that has no corresponding committee member's initials. *Id.* In its Reply, Defendant asserts that "[t]his unassigned column with scores is easily explained" as "Denise Gregory was initially on the selection committee, and then left [Defendant]'s employ" and "[t]hese are

14

most likely her scores in the un-assigned column, but because she did participate in the consensus vote, her name was likely not included." (Doc. 34, PageID 895). However, when asked about the column with scores on it that are not assigned to a particular selection committee member, Dean Haas responded that the column "may have been [Dean Haas'] general idea of what [the consensus score] was going to be" and confirmed that the scores in that column were "preliminary score[s]" of what she thought might end up to be the selection committee's ultimate "consensus score" for each Competency for the respective applicant. (Haas Depo. Doc. 20, PageID 119-122). The unassigned column's scores, and their significance to the selection committee's ultimate hiring decision, are not as easily explained as Defendant asserts. *Compare* (Doc. 34, PageID 895), *with* (Doc. 20, PageID 119-122), *and* (Doc. 20-1, PageID 188-201).

Plaintiff next asserts that although there is a final Data Fusion sheet for each of the five final applicants, there are no individual score sheets or notes from the selection committee members except for Michael Barnhart's individual score sheets for individual applicants and then only Mr. Barnhart's individual score sheets for Glenna Heckler-Todt and Plaintiff and not the other three applicants. (Doc. 20-1, PageID 186-87); (Doc. 39, PageID 1045). Plaintiff questions where the other individual committee members' individual score sheets went. (Doc. 39, PageID 1045-46). Dean Haas acknowledged that she and the other selection committee members had individual score sheets but could not explain where they went, why Defendant did not keep them in this instance, or if keeping them or not was standard practice on Defendant's hiring selection committees. *See* (Doc. 20).

As noted above, the final Data Fusion sheets each have four "Competency" categories that the selection committee used to rank the applicants: professionalism, communication, collaboration, and problem solving. (Doc. 20-1, PageID 188-201). Defendant asserts that the selection committee selected those four competencies to be the characteristics that the committee thought the Director should embody. (Doc. 24, PageID 507) (citing Haas Depo., Doc. 20). Plaintiff explains that other Competencies were available as options to include to assess the applicants, including one titled "In-Touch" which would have been more favorable to her. (Doc. 39, PageID 1042-43) (citing Doc. 20-1, PageID 201). She asserts that it is unclear whether the Student Success Center Staff, the selection committee, or Dean Haas selected those four Competencies and why the decision-maker chose to include those four Competencies and not the other Competency options for ranking the Director position applicants. *Id.* The Court agrees after a review of Dean Haas' testimony and corresponding exhibits. *Compare* (Doc. 20, PageID 81-84), *and* (Doc. 20-1, PageID 183-84), *with* (Doc. 20, PageID 128-32).

In light of the above, the Court finds that Plaintiff has produced sufficient evidence such that a jury could reasonably find that Defendant's proffered reason is "more likely than not" pretext. *See Campbell*, 2013 WL 5164635, at *9; *see also Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 564 (6th Cir. 2004) ("Courts have recognized that in discrimination and retaliation cases, an employer's true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage.") (internal citations and quotations omitted). The Court need not evaluate the sufficiency of Plaintiff's other circumstantial evidence

allegedly showing discriminatory retaliation, as she satisfies her burden based on the final Data Fusion sheets. *See id.*

Finally, "[t]he honest-belief rule is, in effect, one last opportunity for the defendant to prevail on summary judgment. The defendant may rebut the plaintiff's evidence of pretext, by demonstrating that the defendant's actions, while perhaps mistaken, foolish, trivial, or baseless, were not taken with discriminatory intent." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 714-15 (6th Cir. 2007) (internal citations omitted). Defendant asserts that it had an honest belief that it acted properly in light of its HR Department's investigation and final conclusion that there was no retaliation or discrimination for Plaintiff's use of FMLA leave. (Doc. 24, PageID 520). However, that investigation also relied on the final Data Fusion sheets and the Court finds that the honest belief rule is inapplicable for summary judgment purposes in this matter. (Doc. 23-1).

## IV. Conclusion

In light of the foregoing, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment (Doc. 24) is **GRANTED in part and DENIED in part**: Defendant's Motion is granted regarding Plaintiff's claim of FMLA retaliation with respect to the Assistant Director position and denied regarding Plaintiff's claim of FMLA retaliation with respect to the Director position. It is further **ORDERED** that Plaintiff's Motion for Leave to file a Surreply (Doc. 37) is **DENIED**. The Court will schedule a telephone conference in this matter shortly.

**IT IS SO ORDERED.**

_s/ Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court